UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL DABROWSKI,

        Plaintiff,          Case No. 1:22-cv-12755

v.          Honorable Thomas L. Ludington
         United States District Judge

TUBULAR METAL SYSTEMS, LLC, et al.,

         Honorable Patricia T. Morris
        Defendants.          United States Magistrate Judge
_____/

**OPINION AND ORDER (1) SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT AVA'S OBJECTIONS, (2) OVERRULING IN PART AND ADOPTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, (3) DENYING DEFENDANT AVA'S MOTION TO DISMISS, AND (4) SETTING TEAMS SCHEDULING CONFERENCE**

Plaintiff Michael Dabrowski worked for eight months at a manufacturing plant in Pinconning, Michigan. He alleges that at least four corporate entities operated the plant, one of which sought bankruptcy protection less than a month after he started.

Now, alleging age discrimination, Plaintiff has included all four corporate entities in his Complaint, alleging they may be liable under Michigan's mere-continuation exception to the general rule of successor liability. One corporate-entity defendant, Advanced Vehicle Assemblies, LLC ("AVA"), filed a motion to dismiss, contending that Plaintiff did not plead sufficient facts to establish AVA's liability under the mere-continuation exception. The motion was referred to Magistrate Judge Patricia T. Morris for a report and recommendation, to which AVA now objects. The narrow question at this pre-discovery stage is whether Plaintiff adequately pleaded facts that, if true, would subject AVA to successor liability.

I.

A.

According to Plaintiff Michael Dabrowski's Complaint,[1] four Defendants—(1) Tubular Metal Systems, LLC; (2) Dura Automotive Systems, LLC; (3) Global Automotive Systems, LLC; and (4) Advanced Vehicle Assemblies, LLC ("AVA")— are all "owned by the same parent company, Patriarch Partners, LLC, and its founder Lynn Tilton." ECF No. 1 at PageID.3. All four corporate entities allegedly "operate[] the Plant at 411 East Fifth Street," in Pinconning, Michigan, at which Plaintiff was employed. *Id.*

Plaintiff alleges he was hired by Defendants in September 2019 as a manufacturing supervisor when he was 65 years old. ECF No. 1 at PageID.5–6. After Plaintiff had been in his role for just over four months, the plant and operations managers told Plaintiff to "learn what he could" from the outgoing maintenance manager because Plaintiff was going to "assume" the maintenance manager position. *Id.* Plaintiff, the plant manager, and the operations manager agreed that Plaintiff would assume the maintenance manager position and receive a raise. *Id.* But on March 28, 2020, Plaintiff, along with other employees, was temporarily laid off because of the COVID-19 pandemic. *Id.* at PageID.6–7.

On May 7, 2020, Plaintiff was called back to work, but told he would be temporarily working third shift. *Id.* at PageID.7. On May 8, 2020, Plaintiff's supervisors had a meeting with the human resources director and "discussed that Plaintiff was too old to be promoted to the

---

[1] At the motion to dismiss stage, this Court must assume the facts as alleged in Plaintiff's Complaint, ECF No. 1, are true and evaluate the legal adequacy of those facts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, *accepted as true*, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added)).

Maintenance Manager position, and that they wanted to find someone younger, who would be around longer to work in that role." *Id.*

Three days later, Plaintiff returned to work as instructed and "reminded [the human resources director] that he had not received back pay for his increased salary during the time period he had worked as maintenance manager after February 28, 2020." *Id.* But one day later, Plaintiff was told "he was no longer going to be the Maintenance Manager," and that Defendants were instead "hiring a substantially younger employee." *Id.* at PageID.8.

On May 21, after Plaintiff asked when he could return to day shifts, his supervisor told him he would stay on third shift. *Id.* Plaintiff contends Defendants tactically scheduled him to work the third shift to "induce" him to quit. *Id.* Plaintiff informed Defendants that May 22, 2020, would be his last day, but he was told not to return to work. *Id.* at PageID.9.

In November 2022, Plaintiff sued all Defendants, alleging that Dura Automotive discriminated against him because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1), and that all four Defendants discriminated against him because of his age in violation of Michigan's Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2202(1)(a). ECF No. 1 at PageID.11–17.

According to Plaintiff's Complaint, all four corporate entities may be liable for the alleged age discrimination under the rule of successor liability because all four corporate entities have owned or operated the plant he worked at and all four were "mere continuations" or "reincarcerations" of the previous companies, that maintained the same management, personnel, physical location, assets, and general business operations. *Id.* at PageID.3.

**B.**

"Michigan has adopted the traditional rule of successor liability, under which the successor in a merger ordinarily assumes all of its predecessor's liabilities, but a purchaser of assets for cash does not." *Phillips 66 Co. v. Karbowski Tr.*, No. 15-CV-12164, 2015 WL 7075855, at *3 (E.D. Mich. Nov. 13, 2015) (citing *Foster v. Cone–Blanchard Mach. Co.*, 597 N.W.2d 506, 509 (Mich. 1999)). Traditionally, there are five exceptions under Michigan law where a cash-purchaser assumes its predecessor's liabilities: (1) express or implied assumption of liability; (2) de facto consolidation or merger; (3) fraud; (4) transfer lacking good faith or consideration; and (5) mere continuation or reincarnation of the old corporation. *See Foster,* 597 N.W.2d at 509–10.

In 1976, however, the Michigan Supreme Court added a sixth exception, known as the continuity-of-the-enterprise exception, a spinoff of the traditional de-facto-merger exception that applies *only* in the products-liability context. *See C.T. Charlton & Assocs., Inc. v. Thule, Inc.*, 541 F. App'x 549, 552 (6th Cir. 2013) (citing *Turner v. Bituminous Cas. Co.*, 244 N.W.2d 873 (Mich. 1976)); *see also Commonwealth Land Title Ins. Co. v. Metro Title Corp.*, 890 N.W.2d 395, 401 (Mich. Ct. App. 2016). Importantly, the continuity-of-the-enterprise exception is *not* the mere-continuation exception, but through the years, the elements of the former have often been mistakenly invoked as the elements of the latter. *See C.T. Charlton & Assocs., Inc. v. Thule, Inc.*, 541 F. App'x 549, 552 (6th Cir. 2013) (noting there is "some Michigan caselaw" that incorrectly assumes the mere-continuation exception and the continuity-of-the-enterprise doctrine are "one and the same."); *see also Commonwealth Land Title Ins. Co. v. Metro Title Corp.*, 890 N.W.2d 395, 401 (Mich. Ct. App. 2016) (concluding that the mere-continuation exception "continues to exist as a traditional successor-liability theory" in Michigan, separate from the continuity-of-the-enterprise exception); *see also* Alex M. Petrik, *The Current State of Successor Liability in*

*Michigan and Why the Michigan Supreme Court's Clarification Is Necessary*, 93 U. DET. MERCY L. REV. 437, 446 (2016) ("[T]he Michigan Court of Appeals has, on several occasions, misapplied the mere continuation doctrine in ways that have made a mess of successor liability law in Michigan.").

Indeed, as early as 1976, Michigan Supreme Court Justice Coleman noted a lack of clarity about the mere-continuation exception, but explained that it "seems to encompass the situation where one corporation sells its assets to another corporation with the same people owning both corporations. Thus, the acquiring corporation is just a new hat for, or reincarnation of, the acquired corporation. This is actually a reorganization." *Turner v. Bituminous Cas. Co.*, 244 N.W.2d 873, 892 (1976) (Coleman, J. dissenting).

Since then, courts correctly applying the mere-continuation exception have noted the exception requires an analysis of "the totality of the circumstances, but only if the 'indispensable' requirements of common ownership *and* a transfer of substantially all assets are met first." *C.T. Charlton & Assocs., Inc. v. Thule, Inc.*, 541 F. App'x 549, 554 (6th Cir. 2013) (emphasis added) (quoting *Stramaglia v. United States,* 377 Fed.Appx. 472, 475 (6th Cir.2010); *see also In re Clements Mfg. Liquidation Co., LLC*, 521 B.R. 231, 258 (Bankr. E.D. Mich. 2014) (noting "[t]he only indispensable prerequisites to application of the [mere-continuation] exception appear to be common ownership and a transfer of substantially all assets," but recognizing other considerations include a continuity of employees, officers, location, and type of business performed); *Shue & Voeks, Inc. v. Amenity Design & Mfg., Inc.*, 511 N.W.2d 700, 702 (Mich. Ct. App. 1993) (finding mere-continuation exception did *not* apply where there was no continuity of ownership, more than 85% of employees were fired, and "the focus of the business changed from primarily manufacturing to primarily sales and marketing").

C.

All Defendants were served between November and December 2022, *see* ECF Nos. 8; 9; 10; 11. But only Defendant AVA, filed a responsive pleading. ECF No. 15. To that end, AVA sought dismissal of Plaintiff's claims against it, arguing Plaintiff did not sufficiently plead facts that plausibly alleged AVA was a mere continuation such that it could be liable for the alleged age discrimination under a theory of successor liability. ECF No. 15 at PageID.66–72. It also attached a bankruptcy court order approving the sale of Dura Automotive to DNA Buyer, ECF No. 15-1 at PageID.75–133, as well as the 108-page purchase agreement relating to the sale, *id.* at PageID.61–169. Plaintiff responded that he alleged sufficient facts to plausibly allege AVA was a mere continuation of other entities which operated the Fifth Street Plant. ECF No. 20 at PageID.287–89.

AVA's Motion was referred to Magistrate Judge Patricia T. Morris, ECF No. 22, and on October 4, 2023, Judge Morris issued a Report recommending denial of AVA's Motion to Dismiss and suggesting that "a period of discovery specifically targeted toward the issue of successor liability" might be appropriate. ECF No. 32 at PageID.651.

Two weeks later, AVA filed objections. ECF No. 35. Plaintiff did not respond.

II.

A.

A party may object to and seek review of a magistrate judge's report and recommendation. *See* FED. R. CIV. P. 72(b)(2). If a party objects, then "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). The parties must state any objections with specificity within a reasonable time. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted).

Failure to file specific objections constitutes a waiver of any further right of appeal. *Id.* at 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Parties may not "raise at the district court stage new arguments or issues that were not presented" *before* the magistrate judge's final R&R. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

When reviewing an R&R *de novo*, this Court must review at least the evidence that was before the magistrate judge. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the court is free to accept, to reject, or to modify the magistrate judge's findings or recommendations. FED. R. CIV. P. 72(b)(3); *Peek v. Comm'r of Soc. Sec.*, No. 1:20-CV-11290, 2021 WL 4145771, at *2 (E.D. Mich. Sept. 13, 2021).

**B.**

Under Civil Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) dismissal, the court must accept all factual allegations of the complaint as true and will construe the pleading in favor of the nonmovant. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," but the court need not accept as true the complaint's legal conclusions. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

## III.

As a threshold matter, the applicable standard for application of the mere-continuation exception must be clarified.

Both AVA's Motion to Dismiss, ECF No. 15 at PageID.64, and the Magistrate Judge's R&R, ECF No. 32 at PageID.649, invoke *Foster v. Cone-Blanchard Mach. Co.*, 597 N.W.2d 506, 510 (Mich. 1999) when discussing "the factors to be considered" for imposing successor liability under the mere-continuation exception. *Id.* But, importantly, *Foster* is a products-liability case discussing what elements a party must show to establish that the *continuity-of-the-enterprise* exception applies, *not* the mere-continuity exception. *See Foster*, 597 N.W.2d at 510 ("[A] prima facie case of *continuity of the enterprise* exists where…" (emphasis added)). And, as explained earlier, *see supra* Part I.B., the mere-continuation exception "continues to exist as a traditional successor-liability theory" in Michigan, separate from the continuity-of-the-enterprise exception. *Commonwealth Land Title Ins. Co. v. Metro Title Corp.*, 890 N.W.2d 395, 401 (Mich. Ct. App. 2016). Accordingly, the R&R will be overruled to the extent it applies *Foster* as the standard for the mere-continuation exception.

As discussed earlier, the appropriate standard for determining whether successor liability applies under the mere-continuation exception is a totality-of-the-circumstances analysis that requires, at least, common ownership and a transfer of substantially all assets. *C.T. Charlton & Assocs., Inc. v. Thule, Inc.*, 541 F. App'x 549, 554 (6th Cir. 2013). Other relevant considerations include a continuity of employees, officers, location, and type of business performed. *In re Clements Mfg. Liquidation Co., LLC*, 521 B.R. 231, 258 (Bankr. E.D. Mich. 2014).

Having clarified the applicable standard, this Court turns to AVA's four objections to the R&R. *See generally*, ECF No. 35. Each will be addressed below.

A.

First, AVA objects to portions of the R&R that "equate" Plaintiff's and Defendant AVA's use of exhibits. ECF No. 35 at PageID.658–59. AVA argues that its use of United States Bankruptcy Court documents of public record is permitted, but that Plaintiff's use of exhibits in "an effort to supplement his insufficient Complaint" is prohibited, thus, Judge Morris erred in "equating" their use of exhibits and not considering the attached bankruptcy court documents, which were public record. *Id.*

True, when evaluating a 12(b)(6) motion, courts "may consider the Complaint and any exhibits attached thereto, *public records*, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (emphasis added).

But even considering the bankruptcy court records AVA attached to its Motion, *see* ECF No. 15-1, as this Court does now, these records demonstrate only that DNA Buyer, LLC purchased *Dura Automotive*'s assets, and that DNA Buyer, LLC, "shall not be deemed, as a result of the [sale], to be a successor to or mere continuation of [Dura Automotive], and there is no continuity of enterprise or common identity between [DNA Buyer] and [Dura Automotive] as a result of the sale." *Id.* at PageID.82. The records say *nothing* about the Pinconning Plant, AVA, Global Automotive Systems, or Tubular Metal Systems, and thus does not foreclose the existence of the facts Plaintiff alleged—that AVA, Dura Automotive Systems, Global Automotive Systems, and/or Tubular Metal Systems, were all "mere continuation[s]" or "reincarnation[s]" of the "same parent company" that operated the Pinconning Plant at which Plaintiff worked between September 2019 and May 2020. ECF No. 1 at PageID.3.

Accordingly, Defendant's first objection will be sustained to the extent it takes issue with Judge Morris's statement that "the court *must* focus *only* on the averments in the complaint and their adequacy." ECF No. 32 at PageID.649 (emphasis added). This was an incorrect statement of the law. But even considering the public-record documents AVA attached to its Motion to Dismiss, the R&R's conclusions are unaffected.

B.

AVA next objects to Judge Morris's finding that Plaintiff adequately stated a claim against AVA because the Complaint did not make allegations s*pecific to* AVA. ECF No. 35 at PageID.660–62.

Plaintiff alleged *all* Defendants—including AVA—were owned by the same parent company, involving the same founder. ECF No. 1. He alleged that *all* Defendants—including AVA—have operated the Pinconning Plant at which he worked while maintaining the same management, personnel, physical location, business operations, and customers. *Id.* And he alleged that *all* Defendants—including AVA—have "abused their corporate structures" through bankruptcy and asset sales to avoid debts and liabilities. *Id.*

Applying these factual statements to *all* Defendants—including AVA—Plaintiff has pleaded sufficient facts *at this pre-discovery* stage to survive AVA's Motion to Dismiss. Indeed, discovery will clarify the details of which entity owned and operated the Pinconning Plant during what periods, and whether the Pinconning Plant was part of Dura Automotive's asset sale to DNA Buyer, LLC, or whether the plant had been transferred to a different corporate entity *before* Dura Automotive filed for bankruptcy. But at this phase, Plaintiff's factual *allegations* are enough to survive a motion to dismiss, as Judge Morris correctly concluded. *See Carter v. Paschall Truck Lines, Inc.*, 324 F. Supp. 3d 900, 910 (W.D. Ky 2018) (holding that successor liability should not

be decided on a motion to dismiss, but rather should only be decided after discovery on a motion for summary judgment) (collecting cases).

### C.

AVA's third objection asserts it was "clear error" for Judge Morris to "ignore" Plaintiff's admission that DNA Buyer was not affiliated with Tilton. ECF No. 35 at PageID.662–64; *see also* ECF No. 20 at PageID.274 (admitting DNA Buyer is "an entity not affiliated with Tilton."). But even considering that admission, as discussed as it relates to AVA's first objection, the fact that DNA Buyer is not affiliated with Tilton does not foreclose the facts Plaintiff alleged in his complaint: that AVA, Dura Automotive Systems, Global Automotive Systems, and/or Tubular Metal Systems, were all "mere continuation[s]" or "reincarnation[s]" of the "same parent company" that operated the Pinconning Plant at which Plaintiff worked between September 2019 and May 2020. ECF No. 1 at PageID.3. Accordingly, AVA's third objection will be overruled.

### D.

Finally, Defendant AVA objects broadly to Judge Morris's ultimate conclusion that "Plaintiff has stated adequate and plausible allegations that could provide a basis for successor liability," ECF No. 32 at PageID.650, and repeats the same arguments made in its previous three objections, *see* ECF No. 35 at PageID.665–66. As explained above, the only objection that will be sustained is AVA's first objection. *See supra* Part III.A–C. But even considering the public-record evidence AVA points to, Plaintiff has sufficiently pleaded facts to state a plausible claim against AVA. Accordingly, Plaintiff's fourth objection will be overruled.

### E.

In sum, only AVA's first objection will be sustained, and the R&R will be overruled only to the extent it suggests that courts *may not* review matters of public record at the motion-to-

dismiss stage and to the extent it cites *Foster v. Cone-Blanchard Mach. Co.* as the standard for the mere-continuation exception. All of AVA's other objections will be overruled, and the R&R will be adopted in part in all other respects. So, AVA's Motion to Dismiss, ECF No. 15, will be denied. Additionally, the Parties will be directed to attend a remote Scheduling Conference on March 12, 2024 over Microsoft TEAMS to further discuss the timeline for a narrow period of discovery related to successor liability.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff's Objections, ECF No. 35, are **SUSTAINED IN PART,** to the extent that his first objection will be sustained.

Further, it is **ORDERED** that Plaintiff's Objections, ECF No. 35, are **OVERRULED IN PART**, to the extent that his second, third, and fourth objections will be overruled.

Further, it is **ORDERED** that the Magistrate Judge's Report and Recommendation, ECF No. 32, is **OVERRULED IN PART**, to the extent it cites *Foster v. Cone-Blanchard Mach. Co.* as the standard for the mere-continuation exception and suggests that courts may not review matters of public record at the motion-to-dismiss stage.

Further, it is **ORDERED** that the Magistrate Judge's Report and Recommendation, ECF No. 32, is **ADOPTED IN PART**, in all other respects.

Further, it is **ORDERED** that Defendant's Motion to Dismiss, ECF No. 15, is **DENIED**.

Further, it is **ORDERED** that the Parties are **DIRECTED** to attend a TEAMS Scheduling Conference on **March 12, 2024 at 4:00 PM EDT** to discuss the timeline for a narrow period of discovery related specifically to successor liability.

Dated: March 6, 2024　　　　　　　　　　　　　　s/Thomas L. Ludington
　　　　　　　　　　　　　　　　　　　　　　　　THOMAS L. LUDINGTON
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge